UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States for the Use and
Benefit of Auto-Owners Insurance Company,               Case No. 3:15-cv-1423

            Plaintiff

        v.                                          MEMORANDUM OPINION

Fidelity and Deposit Company of
Maryland, et al.,

            Defendants

This matter comes before me on Defendants, Fidelity and Deposit Company of Maryland and Custom Mechanical Systems, Corp.'s motion to dismiss.  (Doc. No. 23).  Also before me are Plaintiff's opposition (Doc. No. 25), Defendants' reply (Doc. No. 26), Plaintiff's sur-reply (Doc. 31), as well as Defendants' sur-rebuttal.  (Doc. No. 35)

## I. BACKGROUND

In 2012, the United States contracted with Custom Mechanical Systems, Corp. ("CMS") for work on a project known as the Army Truck Plant in Lima, Ohio.  CMS became a prime contractor on the project.  As part of its statutory duty, CMS was required to obtain a payment and performance bond for the project.  In August 2012, Fidelity and Deposit Company of Maryland issued the requested surety bond to CMS.

CMS subcontracted with DEC, LLC to perform work on the project.  DEC, in turn, contracted with Sidney Electric Company to perform a portion of the work required under the

subcontract.  As a condition of the subcontract between DEC and Sydney, DEC was required to obtain a surety bond.

In May 2013, Auto-Owners Insurance Company ("AOIC") issued a surety bond naming DEC as principal and Sidney Electric as obligee.  As a condition of the DEC bond, AOIC required DEC, Chuck Zell, Kelly Zell, and Shannon Smith to execute an indemnity agreement.

AOIC alleges Sidney Electric asserted a claim against the DEC bond for labor and materials supplied to the project as the claim was not paid by DEC.  AOIC paid Sidney Electric $60,000 pursuant to a claim on the DEC bond.

This case is brought by United States of America, for the Use and Benefit of AOIC, against Fidelity, CSM, DEC, Chuck Zell, Kelly Zell, and Shannon Smith.  The causes of action include:  (1) breach of contract against CMS; (2) a quantum merit claim against CMS; (3) a payment bond claim against Fidelity; and (4) contractual indemnification against DEC and its indemnitors.   DEC and its indemnitors assert cross-claims against CMS sounding in:  (1) breach of contract; (2) unjust enrichment; and (3) quantum merit.

Defendants Fidelity and CMS move to dismiss the complaint alleging a lack of subject matter jurisdiction and a failure to state a claim upon which relief can be granted.

## II. STANDARDS OF REVIEW

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations.  *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Factual allegations must be sufficient to state a

plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A motion brought under Fed. R. Civ. P. 12(b)(1), challenging subject matter jurisdiction falls into two categories: facial attacks and factual attacks. FED. R. CIV. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of the pleading itself. Upon receiving such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)).

In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. *See Ohio Hosp. Ass'n v. Shalala,* 978 F. Supp. 735, 739 (N.D. Ohio 1997). When a Court considers whether it has subject matter jurisdiction, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (internal citations omitted). *See also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1986).

Under either inquiry, the plaintiff bears the burden of demonstrating that the Court has and may appropriately exercise jurisdiction over the subject matter. *DXL, Inc. V. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

### III. POSITIONS OF THE PARTIES AND THE MILLER ACT

Defendants Fidelity and CMS move for dismissal for a failure to state a claim inasmuch as they contend AOIC does not have standing to bring this action under the Miller Act. Second, they contend this Court does not have subject matter jurisdiction because Plaintiff does not present a

viable or timely claim under the Miller Act.  In contrast, Plaintiff contends it does have standing via

a valid assignment and that the claims against the Defendants are timely.

Under 49 U.S.C. § 3133, the Miller Act addresses the right to bring a civil action:

> (1) In general.—Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

> (2) Persons having direct contractual relationship with a subcontractor.—A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.  The action must state with substantial certainty the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.  The notice shall be served - -

> (A) by any means that provides written, third-party verification of delivery to the contractor at any place the contractor maintains an office or conducts business or at the contractor's residence; or
> (B) in any manner in which the United States marshal of the district in which the public improvement is situated by law may serve summons.

The purpose behind the Miller Act was succinctly stated by the district court in *United States ex. Rel. Acoustical Concepts, Inc. v. Travelers Casualty and Surety Co. of America*, 635 F.Supp.2d 434 (E.D. Va. 2009) as follows:

> [T]he Miller Act's purpose is to ensure that subcontractors are promptly paid in full for furnishing labor and materials to federal construction projects.  *See, e.g., United States ex rel Sherman v. Carter*, 353 U.S. 210, 217, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). ("The essence of [the Miller Act's] policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material.").  In effect, therefore, the Miller Act provides subcontractors on federal construction projects with the functional equivalent of a mechanic's lien typically available to subcontractors on non-federal projects.

*Id.* at pp. 438-39. *See also United States for Use of General Elec. Supply Co, a Division of General Electric Co.*, 11 F.3d 577, 580 (6th Cir. 1993).  Stated differently, "[t]he Act provides a supplier of labor or material who has not been paid in full a right of action to sue on the payment bond."  *United States for the use and benefit of Interstate Mechanical Contractors, Inc.*, 200 F.3d 456, 459 (6th Cir. 2000).

A.  Statute of Limitations and Jurisdiction

Defendants argue there is an absence of subject matter jurisdiction as Plaintiff's claims fall outside of the statute of limitations.  Because the time limit is jurisdictional, Defendants contend the cause of action is insufficient to confer subject matter jurisdiction upon this Court.  I disagree.

Defendants rely on *United States v. International Fidelity Ins. Co.*, 200 F.3d 456, 460 (6th Cir. 2000), for proposition that the one year statute of limitations is jurisdictional and not procedural. The issue there involved which test to apply to the words "labor" and "material" in the context of statutory interpretation for purposes of determining whether remedial or corrective work to a project was subject to the statute of limitations:

> The majority of circuits that have addressed this issue have held that remedial or corrective work or materials, or inspection of work already completed, falls outside the meaning of "labor" or "materials" under § 270b(b).  Hence, performing such work or supplying such materials will not toll the Miller Act's one-year statute of limitations. . . . The majority rule requires the trier of fact to distinguish "whether the work was performed. . . as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project.'"

*Id.*  (Citations omitted).  While the Sixth Circuit took note of the one year statute of limitations as part of its discussion, the majority opinion did not discuss the jurisdictional aspect of the statute.

In contrast, the following circuits have taken up this question and determined the one year time limit under the Miller Act is not jurisdictional.  *U.S. ex rel. Air Control Technologies, Inc. v. pre Con Indus. Inc.*, 720 F.3d 1174, 1176-78 (9th Cir. 2013); *Arena v. Graybar Elec. Co. Inc.*, 669 F.3d 214, 221 (5th Cir. 2012); *Animal Sci. Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 467-68 (3d Cir. 2011).

The Supreme Court's guidance on determining whether statutory requirements such as those under the Miller Act are jurisdictional was discussed by another district court as follows:

> The provision at issue here is the Miller Act's time limitation on filing actions. Typically "rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times" are considered "claim-processing rules" and should not be considered jurisdictional. *Henderson*, 131 S.Ct. at 1203 (citations omitted).  "Filing deadlines. . . are quintessential claim-processing rules." *Id.*  The Supreme Court has noted that language making a time limit emphatic is not the same as language designating a time limit as jurisdictional.  *Arbaugh*, 546 U.S. at 510 ("this court and others have occasionally described a nonextendable time limit as 'mandatory and jurisdictional.' . . . But in recent decisions, we have clarified that time prescriptions, however emphatic, 'are not properly typed "jurisdictional."') (citations omitted).  Indeed in *Henderson*, the Court held that a statute providing that a veteran seeking Veterans Affairs' determination of disability benefits "shall file a notice of appeal . . . within 120 days" was not jurisdictional. ___ U.S., at ___, 131 S.Ct. at 1204 (quoting 38 U.S.C. § 7266(a)).  Instead the Court held that "the language of § 7266 provides no clear indication that Congress wanted that provision to be treated as having jurisdictional attributes."  *Henderson*, 131 S.Ct. at 1205.  Indeed, because of the history of treating filing deadlines as non-jurisdictional, there must be a clear indication that Congress intends for such limitations to be jurisdictional for them to be treated as such. *Sebelius v. Auburn Reg'l Med. Ctr.*, ___ U.S. ___, 133 S.Ct. 817, 825, 184 L.Ed.2d 627 (Jan. 22, 2013).

*United States v. Cannon Management Group, LLC*, 2013 WL 4499739 (S.D. Ohio 2013).  *Accord, U.S. ex rel. Liberty Mechanical Services, Inc. v. North American Specialty Ins. Co.*, 2 F.Supp.3d 610, 617 (E.D. Pa. 2014).

In this case, the Defendants do not provide authority to establish the time limitations under the Miller Act are jurisdictional, therefore, their arguments as to this branch of their motion is denied.

B.  <u>Standing</u>

Defendants argue there is not a valid Miller claim asserted because the required elements under such a claim have not been properly pled nor is there a valid assignment by DEC and its

indemnitors which allows for recovery by AOIC against Fidelity and CMS.  AOIC contends it has standing by virtue of the assignment of DEC to bring suit against CMS and Fidelity.  I consider each of these arguments in turn.

1.   The Assignment

"A valid assignee may properly claim payment under a Miller Act Bond."  *U.S. ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F.Supp.2d 593, 597 (E.D. Val. 2004), citing *United States  ex rel. Sherman v. Carter*, 353 U.S. 210, 219 (1957).   As noted in the complaint, AOIC claims "As collateral to secure DEC's obligations under the Indemnity Agreement, DEC and the Indemnitors assigned to AOIC any and all balances remaining due on any contract in connection with the Project, including the contract between DEC and CMS."  (Doc. No. 1 at ¶ 21).

AOIC also attached the indemnity agreement to its complaint and under the law of this Circuit, I consider those documents appended as such if they are referred to in the complaint and central to this claim.  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

The indemnity agreement which DEC and its indemnitors entered into with AOIC is set forth in its entirety as follows:

> The undersigned does or do hereby represent that the statements made herein as an inducement to the Company to execute or procure the bond or bonds herein applied for, are true, and should the Company execute or procure said bond or bonds, does or do hereby agree, for the undersigned, the heirs, personal representatives and assigns of the undersigned, jointly and severally, as follows:
>
> First, to pay to the Company, in advance, the original and renewal premium, computed at the rates filed and in force at the time the above applied for is executed until the undersigned shall deliver to the Company, at its Home Office in Lansing, Michigan, written evidence satisfactory to the Company, of its discharge from such liability.
>
> Second, to indemnify the company against all loss, costs, damages, expenses and attorneys fees whatever, and any and all liability therefore, sustained or incurred by

the Company by reason of executing of said bond or bonds, or any of them, in making any investigation on account thereof, in prosecuting or defending any action brought in connection therewith, in obtaining a release therefrom, and in enforcing any of the agreements herein contained.

Third, that the Company shall have the right and is hereby authorized but not required:

(a) In the event of any abandonment or forfeiture of the contract guaranteed by said contract bond or any breach of said contract bond, to take possession of the work under said contract, and at the expense of the undersigned to complete, or to contract for the completion of, the same or to consent to re-letting or completion thereof by the Obligee in said contract bond;

(b) To adjust, settle or compromise any claim, demand, suit, or judgment upon said bond or bonds, or any of them, unless the undersigned shall request the Company to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Company, at the time of such request, cash or collateral satisfactory to it in kind and amount, to be used in paying any judgments or judgment rendered or that may be rendered, with interest, costs and attorneys' fees;

(c) To fill up any blanks left herein, and to correct any errors in the description of said bond or bonds, or any of them, or in said premium or premiums, it being hereby agreed that such insertions or corrections when so made, shall be prima facie correct;

Fourth, to assign, transfer and set over, and does or do hereby assign, transfer and set over to the Company, as collateral, to secure the obligations herein and any other indebtedness and liabilities of the undersigned to the Company, whether heretofore or hereafter incurred, such assignment to become effective as of the date of said contract bond but only in event of

(1) any abandonment, forfeiture or breach of said contract or of any breach of said bond or bonds, or any of them, or of any other bond or bonds executed or procured by the Company on behalf of the undersigned; or

(2) of any breach of the agreements herein contained; or

(3) of the default in discharging such other indebtedness or liabilities when due; or

(4) of any assignment by the undersigned for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the undersigned, whether insolvent or not;

(5) of any proceeding which deprives the undersigned of the use of any of the machinery, equipment, plant, tools or material referred to the following paragraph; or

(6) of the undersigned's dying, absconding, becoming a fugitive from justice, or being convicted of a felony, if the undersigned be an individual;

(a) All the right, title and interests of the undersigned in and to all sub-contracts let or to be let in connection with said contract and in and to all machinery, equipment, plant, tools and materials which are now, or may be hereafter be, about or upon the site of said work or elsewhere, for the purpose thereof, including as well materials purchased for or chargeable to such contract, which may be in process of construction, or storage elsewhere, or in transportation to said site;

8

(b) All the rights to the undersigned in, and growing in any manner out of, said contract, or any extensions, modifications changes or alternations thereof or additions thereto, or in, or growing in any manner out of, said bond or bonds, or any of them;

(c) All actions, causes of actions, claims and demands whatsoever which the undersigned may have or acquire against any sub-contractor, laborer or material man, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of said contract;

(d) Any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture or breach, or that thereafter may become due.

Fifth, that liability hereunder shall extend to, and include, the full amount of any and all sums paid by the Company in settlement or compromise of any claims, demands, suits, and judgments upon said bond or bonds, or any of them, on good faith, under the belief that it was liable therefor, whether liable or not, as well as of any and all disbursements on account of costs, expenses and attorney's fees, as aforesaid, which may be made under the belief that such were necessary, whether necessary or not;

Sixth, that in event of payment, settlement or compromise, in good faith, of liability, loss, costs, damages, expenses and attorney's fees, claims, demand, suits, and judgments as aforesaid, and itemized statement thereof, sworn to by any officer of the Company, or the voucher or vouchers or other evidence of such payment, settlement or compromise shall be prima facie evidence of the fact and extent of the liability of the undersigned, in any claim or suit hereunder, and in any and all matters arising between the undersigned and the Company;

Seventh, to waive, and does or do hereby waive, all rights to claim any property, including homestead, as exempt from levy, execution, sale or other legal process under the law of any state or states;

Eighth, that this obligation shall, in all its terms and agreements, be for the benefit of and protect any person or company joining with the Company in executing said bond or bonds, or any of them or executing, at the request of the Company said bond or bonds, or any of them, as well as any company or companies assuming reinsurance thereupon;

Ninth, that separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon the cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising;

Tenth, that nothing herein contained shall be considered or construed to waive, abridge, or diminish any right or remedy which the Company might have if this instrument were not executed;

9

> Eleventh, that the Company shall have the right to decline to execute said bond or bonds, or any of them, and if it shall execute said proposal bond shall have the right to decline to execute any or all of the other bonds herein applied for.

(Doc. No. 1-1).

Defendants argue the assignment provision "is not a fact upon which Plaintiff can rely as the Indemnity Agreement gave no such assignment to Plaintiff."  (Doc. No. 23 at p. 4).  This is because the assignment does not include "any upstream alleged balances remaining due on any contract in connection with the Project, including the contract between DEC and CMS."  (*Id.*)  In addition, all references to the "said contract" in the Indemnity Agreement relate back to the "contract guaranteed by said contract bond."  (*Id.* at p. 5).

AOIC contends a "plain reading" of the Indemnity Agreement assigns DEC's rights to Plaintiff as collateral to secure the obligations to AOIC.  Plaintiff cites to the Fourth Provision of the Indemnity Agreement as, in their view, this section expressly grants AOIC a right to collateral in the form of contract balances that may become due to DEC for the CMS Project:

> All rights of the undersigned in, and growing in any manner out of, said contract, or any extension, modifications, changes or alterations thereof or additions thereto, or in, or growing in any manner out of, said bond or bonds, or any of them.

While both sides vigorously dispute the meaning of the indemnity agreement, neither provides any authority for its position nor do they address the applicable law in making this determination.  The interpretation of the Indemnity Agreement impacts the merits of this litigation and, depending on the applicable law, may involve ascertaining the intent of the parties.  My initial reading of the Indemnity Agreement finds the wording broad enough, at this stage of the proceedings, to survive the Defendants' motion to dismiss.

2.  Miller Act Pleading Requirements

Fidelity and CMS also charge that Plaintiff failed to plead the required elements under the Miller Act. I disagree.

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. at 93 (*citing Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008).

In its complaint, AOIC states it is an assignee by virtue of the Indemnity Agreement by DEC and its indemnitors, it has a right to the balances due on contracts between DEC and CMS. (Complaint at ¶ 21). AOIC also states it made a timely demand on Fidelity and CMS for the sum of $614,457.10 within the time constraints agreed upon by the parties. (Id. at ¶ 24). The complaint also states CMS failed to pay DEC for the labor and material it supplied to the project as well as failing or refusing to pay AOIC for the amounts remaining due to DEC under its contract with CMS. (Id. at ¶¶ 26-28). These allegations are sufficient to put the Defendants on notice of the Miller Act claims against them.

3. <u>Tolling</u>

On July 17, 2014, DEC, CMS, and Fidelity entered into a Tolling Agreement which extended the deadline regarding claims for a year.  (Doc. No. 1-2).  This action was filed on July 17, 2015.  (Doc. No. 1).  Assuming AOIC is deemed to a valid assignee of DEC, the tolling agreement appears to extend the date for filing claims against the Defendants at this preliminary stage of the litigation.

## IV. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss (Doc. No. 23) is denied.

So Ordered.

s/ Jeffrey J. Helmick                          
United States District Judge
